GREENWOOD *v.* THE WILTON RAILROAD.

If a deed describes the land conveyed as bounded on a way, this amounts to a covenant, that there is such a way.

And a covenant that there is such a way, in a legal construction, is a grant of the right of way.

The act incorporating the defendants as a railroad, provided, that if the road should be so constructed as to cross any private way, and should obstruct the

safe and convenient use of it, the party aggrieved should be entitled to his action on the case against the road, and should recover reasonable damages for such injury; but that no such action should be commenced after the expiration of two years from the obstruction. *Held,* that to maintain this action it was not necessary that the railroad should be constructed or managed in an improper and illegal manner ;

That this action, on the case, was intended to give the owner of the way compensation in the shape of damages for the right which the railroad obtained to obstruct the private way ;

That, it appearing on an agreed case, that the road of the defendants was constructed and maintained, across a private way of the plaintiff, in a proper manner, and that a passage was provided for the private way over the track of the railroad, the court could not decide as matter of law, whether the safe and convenient use of the private way, was obstructed; but that this was a question of fact, to be settled by a jury.

The notice of an obstruction to a private way, required to be given to a railroad, by the act of 1847, need not specify the particulars of the obstruction.

CASE. The action was commenced November 3, 1849. The declaration contained four counts.

The first count alleged, that the plaintiff, on the first day of January, 1848, and before and since, was the owner of a parcel of land with a dwelling-house thereon, and had, and ought to have, a certain right of way, for passing and re-passing, with horses, carriages, and otherwise, to and from Main street, in Nashville, by a passage called *Front street.* That the defendants heaped up earth and stones, on the said way, and continued the obstruction. The second count alleges the same, as to a right of way, to and from Franklin and Fletcher streets, by a passage called *Locust street.*

The third count states the ownership of the dwelling-house and the right of way to Main street, by Front street, as in the first count, and alleges that the defendants, January 1, 1848, obstructed the same in maintaining their railroad, and have ever since continued the obstruction ; that more than sixty days before the date of the writ, the plaintiff gave notice in writing, of the obstruction, to Daniel Abbott, one of the directors of the railroad ; yet the defendants have not removed the obstruction, but permit it to remain, whereby, and by virtue of an act approved July 3, 1847, the defendants became liable to pay the plaintiff reasonable damages for the said injury.

The fourth count was the same as the third, in relation to the passage to and from Franklin and Fletcher streets, by Locust street.

Plea, the general issue.

The following facts appeared, on a case stated by the parties :

Previous to September 11th, 1845, there was, and ever since has been, a public highway and street in Nashville, running in an easterly and westerly direction a little to the north of Nashua river, called Franklin street ; and during the same time, another public highway and street, running in a northerly and southerly direction, crossing Franklin street and the river, and called Main street. At that time, the land lying between Franklin street and the river, and to the west of Main street, was divided into several parcels, owned by different proprietors, and the owners of the land had laid out, and opened over their respective parts of the land, two streets or passages, one running westerly from Main street, along or near the river, and called Front street ; the other called Locust street, connecting with Front street at its western termination, and running northerly and across Franklin street, to another street called Fletcher street. These passages, called Front and Locust, had been laid out and were then open for general use as streets ; but they were not established as highways, or streets by public authority, or by a dedication and user of twenty years.

On the eleventh of September, 1845, Joel Carter owned all the land over which Locust street had been laid out, and the land at the western part of Front street ; but he did not own the land over which Front street was laid out farther to the east, where it is crossed by the railroad.

In some conveyances of parcels of land within the tract, Front street had been mentioned as laid out, or to be laid out ; but in no deed under which Carter claimed any part of his land, was any mention made of Front, or Locust streets. Carter, on the eleventh of September, 1845, conveyed to the plaintiff a parcel of land situated on the angle made by Front and Locust streets, and bounded partly on each of those streets, and in his deed conveying the land, he described it, as beginning at the corner

of Front and Locust streets, thence by Front street eighty-five feet; thence [south, 21° west, 116 feet; thence north, 69° west, 85 feet; thence north, 21° east, 116 feet to the first mentioned bound, the corner of Front and Locust streets. The plaintiff, before January 1, 1848, had built his dwelling-house, on this land purchased of Carter.

The defendants, in 1848, laid out and established, according to law, their road southerly of Franklin street, across Front and Locust streets. The railroad does not touch the plaintiff's land. The railroad passes near the top of the hill ascending from Front to Franklin street, through Locust, and the hill is graded off on the south side of the railroad, to be no steeper or higher than the old hill was in Locust street, before the railroad was built, and there is no other injury or obstruction than was necessary to build the railroad in that place, and so pass Locust street as aforesaid. More than sixty days before the commencement of the suit, the plaintiffs gave the defendants written notice that in the construction and maintenance of their road, they had obstructed his right of way by the passages called Front and Locust streets ; the notice did not more particularly specify the nature of the obstruction or injury of which the plaintiff complained.

The act incorporating the defendants, was passed December 28th, 1844, and provided that, " if the said railroad, in the course thereof, shall intersect or cross any private way, the said corporation shall so construct said road, as not to obstruct the safe and convenient use of such private way ; and if said railroad, shall not be so constructed, the party aggrieved shall be entitled to his action on the case, and shall recover reasonable damages for such injury ; but no action shall be commenced after the expiration of two years from the obstruction aforesaid." The act also contained a provision, that the legislature might alter, amend or repeal it, or any of its provisions, if the public good required it.

*C. G. Atherton,* for the plaintiff.

*Sawyer & Stevens,* and *Gove,* for the defendant.

PERLEY, J. The plaintiff, to maintain his action, must shew that he had such a way as he describes in his declaration. He must have obtained his right of way by grant from the owner of the land, or by prescription, which implies a grant. An actual opening of the way by the owners of the land, such as might amount in time to a dedication to the public, or might be evidence of a license for individuals to use the way, would not be enough.

When Carter conveyed to the plaintiff, September 11th, 1845, he owned the land over which Locust street had been laid out; but he had nothing at that part of Front street, which is crossed by the defendant's road. He had no right of way over that part of Front street appurtenant to the land which he sold, and which he could convey with it. He could have no such right of way without a grant from the owners of the land. Carter therefore, had no power to grant the plaintiff a right of way over that part of Front street, where it is crossed by the rail road, and on this case the plaintiff can maintain no action for the obstruction of Front street.

But Carter owned all the land, over which Locust street was laid out; that street was opened when he conveyed to the plaintiff, and he could grant the plaintiff a right of way over Locust street, as appurtenant to the land which he sold.

In his deed to the plaintiff, Carter describes the premises, as bounded on the corner of Front and Locust streets, and as situated on the corner made by those streets. This, in law, amounts to a covenant by Carter, that there was such a street as Locust street. *Parker* v. *Smith,* 17 Mass. Rep., 413 ; *Matter of 29th Street,* 1 Hill, 189, 191 ; *Matter of 32d Street,* 19 Wendell, 128. And a covenant by the owner of land, that there is a right of way is, by implication, a grant of the right. The owner of the land, and all claiming under him, would be estopped to deny that there was such a way. *Holmes* v. *Saller,* 3 Levinz, 305 ; *Roberts* v. *Karr,* 1 Taunt., 495 ; *Fowle* v. *Bigelow,* 10 Mass. Rep., 379.

The plaintiff, therefore, had a right of way over Locust street, by grant from Carter, who owned the land.

It has been made a question, whether the public act of 1847,

operates to repeal the provision in the charter of the defendants, giving a remedy for the obstruction of a private way, by an action on the case against the railroad. The legislature, having in their grant to the defendants, reserved power over the charter, the act of 1847, must be held to repeal and control the charter, so far as the legislature intended it should have that effect. The defendants are not named in the act, and there is nothing which points its provisions particularly against them. It is quite clear, however, that the policy of legislation in this State, has been to make the law on the subject of railroads, systematic and uniform, so far· as could be done consistently with vested rights; and we think the intention of the legislature must have been, so far as they had power, to make the provisions of different railroad charters conform to the general law.

But whether the act of 1847, is inconsistent with the provision of the defendant's charter, giving an action on the case for the disturbance of a right of way; whether the public act, and this provision of the charter, were intended to give redress for the same, or for different grievances, the court have not in this case undertaken to decide; being of opinion that the plaintiff has made out the formal and preliminary steps necessary to maintain his action under the provision of the charter, and also under the public law, provided he can shew as matter of fact, that he has sustained a real injury.

Whatever may be the construction of the statute of 1847, the action on the case, given by the act of incorporation, was intended not only to give damages for the least injury actually sustained by interruption of the use of the way, but to furnish the owner of the way with a method of obtaining from the corporation compensation for the right which they had taken under the charter, of building and maintaining the road, so as to obstruct the private way.

The railroad, under their charter and under the public law, may obtain a right to lay out their road across a private way. The proprietor of the way, is not made a party to the proceedings by which the road is established; no notice to him is required to be given; and no damages can be awarded, as to the

land-owner, for the right which the road obtain under their char-
ter, and the law to make and maintain the road, across the way.
The charter indeed, makes it the duty of the railroad, so to con-
struct and maintain their road as not to interrupt the convenient
use of the private way.   But in some cases this would not be
possible, and in others, though it might be done, the expense of
doing it would be so greatly disproportionate to the object, that
we cannot suppose the intention was to require the road to in-
cur a great and unnecessary expense, when the same law pro-
vides a remedy, by which the owner of the way, can recover of
the road, adequate compensation for the damage caused to him,
by laying out and maintaining the road.   A case might be put,
where the expense of so constructing the road as not to inter-
rupt the use of a private way would far exceed the whole value
of the land, to which the private way belonged.   The reason-
able construction of the charter, taken together, is that the rail-
road are bound to make and maintain their road in a proper and
reasonable manner; and if in so doing, they cause any injury to
a private way, the action provided by the charter is to give an
adequate compensation, in the shape of damages, for the right
which the road have obtained so to make and maintain their
road.

The action given by the charter, cannot be brought after the
expiration of two years from the obstruction.   This shews that
the action is not given merely to recover damages for actual in-
terruption of the use of the way.   The claim for compensation
must be made within two years; and the railroad are not to be
harrassed with successive actions, for interruptions of the use of
the private way, from time to time.   There is to be but one ac-
tion ; the plaintiff recovers *in solido*, and once for all, compen-
sation in the form of damages, for the right which the defen-
dants have taken to obstruct the private way, by the laying out
and maintaining of their road.   To sustain this action under the
charter it is not necessary to shew that the road has been laid
out or maintained and managed in an improper manner.

We do not know how the owner of the way is to obtain his
compensation for the right which he has lost, unless he is to re-

cover it in the action on the case given by the charter, or un-
der the act of 1847, and that act is, in some of its parts, not a
little obscure, and perhaps may not, in all cases, be found to fur-
nish an adequate remedy. From one part of the act, it would
seem that the sixty days' notice, is regarded only in case of an
existing obstruction ; yet in another part of the act it is provi-
ded, that no action shall be maintained, if within sixty days af-
ter the notice, the railroad proceed, by application to the com-
missioners, and comply with their award ; from which it might
be inferred that sixty days' notice was required in all cases. If
the language of the act were to receive a literal construction a
case might occur, where the way had been wrongfully interrupted
for sixty days, and the owner would be without remedy under the act;
for if the road provide the substitute required by the commissioners,
within sixty days from the notice, no such action can be main-
tained. Besides, the act does not provide for trying the ques-
tion of obstruction, by a jury, but makes the decision of the com-
missioners final on that point. In view of these difficulties attend-
ing the construction of the act of 1847, the court are not pre-
pared to hold that the provision of the charter giving an action
on the case, has been superseded by the public act. That ques-
tion is left unsettled.

It is objected that the notice given in this case, is not suffi-
cient under the statute of 1847. The act provides in general
terms that in case of an obstruction, the plaintiff shall give sixty
day's notice of the same, in writing. The defendants contend
that the notice ought to point out the particulars, and the extent
of the obstruction complained of, so that the defendants may be
informed by the notice, what they are to do, to remove the ground
of complaint. The statute does not in terms require the partic-
ulars of the obstruction to be stated in the notice, and we do not
think the nature of the case makes it necessary ; for the rail-
road are not obliged to decide for themselves what shall be done
to remove the obstruction, but may apply to a public tribunal to
determine whether there be an obstruction and what shall be done
to remove it. There is in this respect an important distinction
between this case and that of *Spicer* v. *Slade,* cited for the de-

fendants, from 9 Johns. Rep., 359. The notice in that case, was a notice of adjudication by the commissioners of highways, on a question of encroachment, and in the nature of a judgment; and the question arose in an action to recover a penalty for neglecting to remove the obstruction, according to the notice. If the commissioners under the act of 1847, should give a general notice to the railroad to remove obstructions, without specifying what was to be done, the case would be much more in analogy with *Spicer* v. *Slade*. We are of opinion the notice was sufficient.

To maintain the plaintiff's action it is not necessary that the obstruction should be caused by making or maintaining the road, in an improper and illegal manner. But if by the making or maintaining of the road, (and maintaining would include running and working the road,) the convenient use of the private way is obstructed, it is enough. It must be a real, and not a theoretic and imaginary injury. It is not like the case of a trespass upon land where the owner has a right to exclusive possession, and may maintain his action for an entry upon it, without showing actual damage. The right of the plaintiff in this case is incorporeal and is not interrupted at all, unless it is interrupted in a way to cause actual damage.

The case does not find facts, from which the court can draw the legal conclusion whether there has been such an obstruction of the right of way. That is a question of fact, which must be sent back to be tried by the jury.